UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Rx.com, | § | |
|     *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-05-4148 |
| | § | |
| Cathy Steward Hruska, | § | |
|     *Defendant*. | § | |

**OPINION ON SUMMARY JUDGMENT**

Before the court are the parties' cross-motions for summary judgment under Federal Rule of Civil Procedure 56(c). For the reasons that follow, plaintiff Rx.com's motion for summary judgment (Dkt. 51) is DENIED; defendant Cathy Steward Hruska's motion for summary judgment (Dkt. 54) is GRANTED.

**BACKGROUND**

Rx.com was an Internet mail order pharmacy that began operations in 1999 and continued through May 2001. Rx.com was founded by Joseph Rosson who served as its Chief Executive Officer until April 2000. At that time Rosson resigned at the request of Alliance UniChem, an investor in Rx.com. Other members of Rosson's family serving in positions with Rx.com also resigned.

Rx.com hired defendant Steward Hruska in March 1999. She served in several officer positions, including as Vice President of Sales and Marketing. Steward Hruska signed a confidentiality agreement with Rx.com, the alleged breach of which is at the heart of this dispute. The relevant parts of the agreement state:

> 2.    I also agree to never disclose Rx.com's Confidential and Proprietary Information. I understand that the term Confidential and Proprietary Information means information related to personnel, pricing, business,

        marketing, finances, operations, research, products, technologies, methods, correspondence, records, procedures, documents, and business contracts. This does not include information that is generally known to the public.

3.      If I leave my employment for any reason, I will continue to honor all terms of this Agreement. Additionally, I will immediately return all Confidential and Proprietary Information, Medical and Prescription Information, equipment, drawings, papers, and other records pertaining in any way to my employment (in whatever form or storage media and all copies.[1]

As part of her job duties, Steward Hruska negotiated on Rx.com's behalf with Pharmacy Benefit Managers (PBMs) seeking to gain access to their mail order pharmacy customers. Three national PBMs controlled nearly all insurance-covered mail order prescriptions in the United States: Caremark RX, Inc. (formerly PCS Health Systems); Medco Health Solutions, Inc.; and Express Scripts, Inc. In Spring 2001, Steward Hruska worked on a proposed Internet Provider Agreement with PCS Health Systems to give Rx.com access to PCS's network of mail order pharmacy clients. Steward Hruska had extensive contract negotiations with PCS and it was these interactions that led to her being called as a witness in a separate anti-trust lawsuit Rx.com is prosecuting against the PBMs (the Texarkana suit).

Steward Hruska left Rx.com in May 2001 when the company shut down. After Rx.com closed, it sold its computers to a company called PDX, Inc. Before the computers were sold, however, Alliance UniChem copied the e-mails on the hard drives of the computers. Rosson believes that there is a confidentiality agreement between Rx.com and Alliance but has been unable to locate any documentation to that effect. Rx.com has made no request that Alliance return the e-mails. It is also unclear whether the e-mails were deleted before the computers were transferred to PDX.

---

[1]      Dkt. 51, Ex. 3.

In May 2000, Rosson filed a derivative action against Rx.com, Alliance UniChem, and Steward Hruska in Travis County, Texas.[2] In this action Rosson and other members of his family asserted that the defendants participated in a conspiracy to force the Rossons to sell their shares in Rx.com. Steward Hruska maintains that in order to defend herself from the lawsuit she sought and received the permission of Roger Phillips, then president of Rx.com, to retain a copy of her work related e-mails on a compact disk given to her by David Utley, another Rx.com employee. The Travis County lawsuit settled in June 2003.

In October 2004, Rosson, through Rx.com, brought anti-trust claims against the PBMs in the Texarkana Division of the United States District Court for the Eastern District of Texas.[3] In that action, Rx.com alleges that Medco, Caremark, and Express Scripts unlawfully refused to deal with Rx.com, causing Rx.com to go out of business in May 2001. In January 2005, Rosson revived Rx.com for the apparent purpose of establishing standing to pursue these claims; he bought up shares of Rx.com for between a nickel and a quarter a share "[f]or the purpose of bringing this litigation [the Texarkana case] against the PBMs and other – other claims that Rx.com may have in its corpus."[4] Rx.com has not attempted to reenter the pharmacy market and there is no suggestion that it plans to do so.

In April 2005, Steward Hruska was contacted by attorneys for Caremark regarding the Texarkana lawsuit. During April and May Caremark's attorneys called Steward Hruska seeking her recollection of the negotiations she had with Caremark's predecessor, PCS, about the contract

---

[2]   *Joe S. Rosson, et al. v. Rx.com, Inc., et al.*, Case No. GNO-01419 (261st Judicial District of Travis County, Texas).

[3]   *Rx.com, Inc. v. Medco Health Solutions, Inc., et al.*, 5:04-cv-0227.

[4]   Dkt. 54, Ex. B (Tr. of J. Rosson Dep. dated May 24, 2006, at 72:21-73:12).

3

between PCS and Rx.com. Subsequently, Caremark sent Steward Hruska a subpoena ordering her to produce documents and to provide deposition testimony about the negotiations she had with the PBMs while employed by Rx.com.

These communications with the Caremark attorneys are the focus of Rx.com's claims. Steward Hruska produced copies of documents she felt were responsive to a subpoena issued the PBMs. Rx.com alleges that the subpoena Steward Hruska received was not validly served.

Rx.com received notice that Steward Hruska would be deposed in the Texarkana litigation at least two weeks before the deposition was scheduled. This notice included a proposed subpoena that Caremark planned to serve on Steward Hruska. Rx.com never objected to the subpoena. It did not seek to quash it. It apparently did not request a protective order regarding Steward Hruska's testimony. Counsel for Rx.com appeared at the deposition and questioned Steward Hruska. At the preliminary injunction hearing held in January 2006, Rosson testified that he had notice of Steward Hruska's deposition and that his attorneys were given the documents two weeks before the deposition, but did not object to the deposition because there was not a compliant subpoena. (Rosson now states that he was simply incorrect about when he was notified).

Rx.com argues that because this was only a proposed subpoena and it was never technically served on Steward Hruska, it could not object to it and Steward Hruska was not bound by it, nor compelled to comply with it. Rx.com further maintains that in any event, Steward Hruska violated the confidentiality agreement by speaking with Caremark's attorneys on the telephone before any subpoena was served.

Approximately two weeks after her deposition in the Texarkana lawsuit, Rx.com filed this action against Steward Hruska. Rx.com alleges that Steward Hruska breached the confidentiality

agreement in three ways: (1) by discussing and disclosing allegedly confidential e-mails and correspondence; (2) by discussing purportedly confidential contract information; and (3) by retaining a copy of a PBM report.

In summary: Rosson, through Rx.com, is suing the PBMs, including Caremark, in the Texarkana lawsuit. Rosson and Rx.com are suing the PBMs for anti-trust violations, alleging that the PBMs refused to enter into contracts with Rx.com. Caremark's attorneys contacted Steward Hruska in April and May 2005. She told them that she believed that Rx.com had a contract with PCS, Caremark's predecessor; that Rx.com and PCS had done business under that contract; and that changes had been made to the contract. Rosson insists this is factually incorrect. And he contends that if a jury should believe Steward Hruska, Rx.com will lose the potential recovery it may have had in the Texarkana lawsuit. Rx.com therefore seeks damages and an injunction against Steward Hruska.

## LEGAL STANDARDS

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The party moving for summary judgment must demonstrate that there are no genuine issues of material fact. *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). An issue is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248.

In responding to a properly supported summary judgment motion, the non-movant cannot merely rely on its pleadings, but must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 309 (5th Cir. 2005). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255; *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

## ANALYSIS

Rx.com seeks summary judgment on its five causes of action against Steward Hruska: (1) breach of contract; (2) misappropriation of confidential information; (3) breach of fiduciary duty; (4) conversion; and (5) a claim based on the Texas Theft Liability Act. For her part, Steward Hruska maintains she is entitled to judgment as a matter of law because: (1) the information at issue is not in fact confidential; (2) Rx.com has provided no evidence of actual damages or irreparable harm caused by her actions; (3) she may not be sued for responding to a subpoena; and (4) she does not owe Rx.com a fiduciary duty to refrain from voluntarily assisting the PBMs. Steward Hruska's first two points are meritorious and are fatal to all of Rx.com's claims. There is no need to consider her remaining contentions.

**1.   Confidentiality**

Each of Rx.com's five causes of action is predicated on the assertion that the information disclosed by Steward Hruska is confidential.

### a. Retention of E-Mails

Much of Rx.com's argument regarding Steward Hruska's alleged disclosure of confidential and proprietary information concerns her retention of sixty-eight e-mails upon her departure from Rx.com in May 2001, and her subsequent disclosure of these to Caremark's attorneys. It should be noted Steward Hruska apparently had the permission of Rx.com to retain the e-mails. In any event, because these e-mails were shared with Alliance, and perhaps, PDX, Inc., and not kept secret, they were not confidential.

In his May 24, 2006 deposition Rosson admitted that Alliance had preserved Rx.com's computer hard drive memories, including e-mails and other correspondences, before Rx.com sold all of its computers to a company called PDX, Inc. sometime after May 2001.[5] Furthermore, Rosson admitted that Rx.com has been unable to prove the existence of any confidentiality agreement with Alliance, Alliance has never returned any e-mails, Rx.com has never asked Alliance to return any e-mails, and Rx.com has no idea how Alliance has used the e-mails in its possession.[6]

"The owner of the secret must do something to protect himself. He will lose his secret by its disclosure unless it is done in some manner by which he creates a duty and places it on the other party not to further disclose or use it in violation of that duty." *Furr's Inc. v. United Speciality Advertising Co.*, 385 S.W.2d 456, 459 (Tex. Civ. App.—El Paso 1964, writ ref'd n.r.e.), *cert denied*, 382 U.S. 824 (1965). In *Interox America v. PPG Industries, Inc.*, 736 F.2d 194 (5th Cir. 1984), the purchaser of a plant sought to enjoin the seller's sale of the plant to a third party after the plant had reverted back to the seller, alleging that such a sale would disclose the purchaser's confidential trade

---

[5]   Dkt 54, Ex. B (Tr. of J. Rosson Dep. dated May 24, 2006, at 79:22-80:14, 81:22-82:5).

[6]   *Id.* at 47:10-25, 83:4-23.

secrets. The Fifth Circuit found the sale would not disclose confidential trade secrets since the purchaser gave two demolition contractors copies of a manual containing a list of all the machinery and equipment contained therein. *Id*. at 202. The purchaser admitted that one of these contractors could have purchased the plant and in turn sold the plant and the manual. *Id*. The court reasoned that the purchaser "voluntarily disclosed the information which it now seeks to protect by its request for a preliminary injunction," and held "[o]ne who voluntarily discloses information or who fails to take reasonable precautions to ensure its secrecy cannot properly claim that the information constitutes a trade secret." *Id*.

These facts are roughly analogous to this case where Rx.com allowed Alliance complete access to its computer hard drives, including e-mails and correspondence. Any disclosure by Steward Hruska to Caremark's attorneys of the e-mails in her possession would not have included confidential information since Rx.com itself vitiated the information's confidentiality by voluntarily disclosing it to Alliance. In addition, the e-mails apparently were also turned over to yet another party, PDX. Rx.com's arguments that Alliance never used or disclosed the e-mails is off-point.

The plaintiff does contend that it took steps to protect the confidentiality of the information by entering into a confidentiality agreement with Alliance. By affidavit, Rosson declares that "While I have been unable to locate this particular document [the confidentiality agreement between Rx.com and Alliance], I recall its existence. I simply cannot locate it."[7] Other than Rosson's affidavit, however, there is no summary judgment evidence that Rx.com took steps to protect the confidentiality of the e-mails. Affidavits based merely upon information and belief do not satisfy the requirement of Rule 56(e), and those portions of an affidavit that do not comply with Rule 56(e)

---

[7] Dkt. 69, Ex. 2.

are not given weight or considered in deciding a motion for summary judgment. *See Richardson v. Oldham*, 12 F.3d 1373, 1378-79 (5th Cir. 1994); *see also Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994) ("Testimony based on conjecture or speculation is insufficient to raise an issue of fact to defeat a summary judgment motion . . ."). Moreover, it is worth noting that Rx.com has never requested Alliance return the e-mails, delete them, or take other steps to prevent their further disclosure. Indeed, Rx.com sold the computers which may have still contained the e-mails to another company, PDX. While Rosson states that "it is my understanding that Alliance purged any confidential information from these computers before they were sold to PDX," this again relies upon mere belief and is insufficient for purposes of Rule 56(e).[8]

Rx.com also suggests that Alliance had a fiduciary relationship with Rx.com so that Alliance had a duty to protect the confidentiality of the e-mails. This argument is not entirely plausible given that the Rossons brought suit against Alliance in the Travis County case alleging that Alliance failed to abide by its duties to Rx.com. And the fact is there is no evidence of a fiduciary relationship between Rx.com and PDX or any confidentiality agreement between the two. Rx.com has not provided any competent summary judgment evidence creating a genuine fact issue that it took steps to keep the e-mails in question confidential.

      **b.**     **Disclosure of Contract Information Before the Subpoena**

Rx.com's next assertion is that Steward Hruska disclosed allegedly confidential information during her discussions with Caremark's attorneys concerning Rx.com's contract with PCS before she had been subpoenaed. These telephone conversations concerned Steward Hruska's discussions and interactions with Caremark's predecessor, PCS, while Steward Hruska was employed by

---

[8]    Dkt. 69, Ex. 2.

Rx.com, and Rx.com's contractual and business relationship with PCS.[9] These conversations could not have been confidential since they concerned Steward Hruska's communication with a third party, PCS. *See, e.g., Stewart & Stevenson Servs., Inc. v. Serv-Tech, Inc.*, 879 S.W.2d 89, 99 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (confidential information is information that is secret and not known by third parties). Rx.com's contract with PCS was not a secret, and certainly not a secret to PCS's successor, which already had a copy of the contract. Caremark's attorneys based their questions to Steward Hruska upon the PCS/Rx.com contract in their possession, and furnished her with a copy.[10]

Rx.com attempts to broaden the purported scope of the conversations by arguing that "the evidence conclusively reveals that Steward Hruska's discussions with Render [one of Caremark's attorneys] included Rx.com's legal counsel's internal review of the PCS contract and its internal negotiations about the proposed IPA [Internet Provider Agreement]."[11] However, it cites only its own brief in support of its motion for summary judgment as the "conclusive evidence." And the section of the brief referenced merely alludes to Rx.com's repeated assertions that Steward Hruska admitted in deposition that she gave Caremark confidential information. A review of the deposition testimony shows this to be a strained interpretation.[12] Consequently, there is no summary judgment

---

[9]     Dkt. 54, Ex. F (Tr. of C. Steward Hruska Dep. dated March 29, 2006, at 19:23-27:7).

[10]    Dkt. 54, Ex. G. (Tr. of C. Steward Hruska Dep. dated March 29, 2006, at 34:9-13).

[11]    Dkt. 69.

[12]    For example, see Dkt.65, Ex. D (Tr. of C. Steward Hruska Dep. dated March 29, 2006, at 23:9-13; 69:21-70:1; 92:15-93:2):

> Q.    So you didn't feel like there was a risk that you were revealing anything that was privileged between the general counsel and yourself or anyone else at Rx.com?
> A.    No, sir.

10

evidence that Steward Hruska disclosed confidential information to Caremark's attorneys during their April and May 2005 telephone conversations.

### c. PBM Report

Rx.com's final contention is that Steward Hruska breached the confidentiality agreement by retaining a copy of a six year old seven page PBM report. This report lists the number of requests to fill prescriptions that Rx.com received from PBMs between December 1999 and February 2000. It is not apparent how this would provide a competitive advantage to Rx.com when Rx.com no longer competes in the pharmacy market. *See, e.g., Computer Assocs. Int'l v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996) (to be a confidential trade secret, the information must give its holder some advantage over its competitors). Thus, Rx.com has not raised a genuine issue of material fact concerning its allegations of a breach of confidentiality by Steward Hruska.

---

. . .

| | |
|---|---|
| Q. | Okay. From that perspective, would you agree with me that there are confidential and proprietary documents in this exhibit, Exhibit No. 7?<br>MR. WHITLEY: Objection; form. |
| A. | Well, no, because the things that we were discussing were already known by another party. |

. . .

| | |
|---|---|
| Q. | And you agree certainly under oath then and you agree that – |
| A. | I know – |
| Q. | – you talked about confidential and proprietary information with Caremark and that predated you subpoena, correct?<br>MR. WHITLEY: Objection; form. |
| A. | Yes. I – that is what I said, but I was – I – I got confused because the contract was actually presented to me. They had a copy of the contract so if they had it, too, then I guess it wouldn't be confidential and proprietary because they had a contract, too. |

## 2. Damages

Proof of damages is also an essential (and missing) element of each of Rx.com's five causes of action.[13] To start with, Rosson admits in his deposition that Steward Hruska's telephone conversations with the Caremark attorneys did not cause Rx.com to suffer any damage to its business.[14] Additionally, Rx.com's damage theories are either speculative or based on conjecture; none is ascertainable to a reasonable degree of certainty or refers to any definite standards.

The general rule in Texas is that "[t]here can be no recovery for damages which are speculative or conjectural." *Roberts v. U. S. Home Corp.*, 694 S.W.2d 129, 135 (Tex. App.—San Antonio 1985, no writ.); *see also Berry Contracting, Inc. v. Coastal States Petrochemical Co.*, 635 S.W.2d 759, 761 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e.) ("[D]amages must be susceptible of ascertainment in some manner other than mere speculation, conjecture or surmise and by reference to some fairly definite standard, such as market value, established experience or direct inference from known facts"). While "the uncertainty of damages is not fatal to recovery once the fact of damages is established, it is nevertheless a reasonable degree of certainty with which the extent of damages must be shown." *A.B.F. Freight Systems, Inc. v. Austrian Import Serv., Inc.*, 798 S.W.2d 606, 615 (Tex. App.—Dallas 1990).

---

[13] *See Eckland Consultants, Inc. v. Ryder, Stilwell, Inc.*, 176 S.W.3d 80, 89 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (breach of contract) ("A breach of contract claim cannot survive if the plaintiff was not damaged by the breach"); *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 463 (Tex. App.—Austin 2004, pet. denied) (misappropriation of confidential information) ("The elements of misappropriation are . . . (4) damages"); *In re Segerstrom*, 247 F.3d 218, 226 n.5 (5th Cir. 2001) (breach of fiduciary duty) ("[I]njury and causation are . . . required when a plaintiff seeks to recover damages for breach of fiduciary duty"); *United Mobil Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147-48 (Tex. 1997) (conversion) ("A plaintiff must prove damages before recovery is allowed for conversion"); TEX. CIV. PRAC. & REM. CODE ANN. § 134.005(a) (Vernon 2005) (Theft Liability Act) ("In a suit under this chapter, a person who has sustained damages resulting from theft may recover . . . .").

[14] *See* Dkt. 65, Ex. A, pp. 38-39.

### a. Lost Value and Regulatory Fines

Rx.com first asserts that it was damaged by the potential "lost value" of its anti-trust claims in the Texarkana lawsuit. Specifically, Rx.com argues that Steward Hruska's disclosures to the third party PBMs in the Texarkana lawsuit could inhibit its potential recovery if the case ever goes to trial.[15] This assumes that Steward Hruska's testimony was false and that it would be believed by the jury. Moreover, Rx.com does not dispute that any potential recovery is speculative, and unsupported by evidence of any kind.[16] Specifically, Rosson stated he believed Rx.com had only a legal theory to recover on, no damage model, and no idea as to what damages would be.[17] Not only do these statements show a lack of definite standards by which Rx.com's "lost value" damage theory must be ascertained, they also demonstrate Rx.com lacks any certainty about the degree to which it claims to have been damaged. *See Berry Contracting, Inc.,* 635 S.W.2d at 761; *A.B.F. Freight Systems, Inc.,* 798 S.W.2d at 615. Similarly, Rx.com evidences no standards nor any degree of certainty concerning the extent to which it might hypothetically be damaged by disclosures concerning its potential Health Insurance Portability and Accountability Act violations under its "regulatory fines" theory.[18]

Rx.com attempts to shore up its damage claim by arguing that pursuant to *Kaiser v. Northwest Shopping Center, Inc.*, 587 S.W.2d 454, 457 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.), it may treat Steward Hruska's alleged breach of contract as total and sue for all foreseeable

---

[15]   Dkt. 54, Ex. B (Tr. of J. Rosson Dep. dated May 24, 2006, at 226:17-227:10).

[16]   Dkt. 54, Ex. B (Tr. of J. Rosson Dep. dated May 24, 2006, at 227:15-228:5).

[17]   Dkt. 54, Ex. B (Tr. of J. Rosson Dep. dated May 24, 2006, at 228:3-228:5).

[18]   Dkt. 54, Ex. B (Tr. of J. Rosson Dep. dated May 24, 2006, at 237:2-21).

future damages. This ignores the fact, though, that the *Kaiser* proposition is still subject to the general rule that the extent of damages must be established with a reasonable degree of certainty. *See A.B.F. Freight Systems, Inc.,* 798 S.W.2d at 615. *Kaiser* dealt with the foreseeable damages stemming from the breach of a commercial lease; damages that could reasonablely have been ascertained with reference to the breached lease agreement. In this case, on the other hand, Rx.com has not established the extent of its alleged future damages with any degree of reasonable certainty. Thus, the court concludes that Rx.com has not established any damage to itself under either the "lost value" or "regulatory fines" theories.

### b.      Irreparable Harm and Attorneys' Fees

Rx.com's other damage theory is founded on the assertion that under Chapter 38 of the Texas Civil Practice and Remedies Code the attorneys' fees it has incurred in its lawsuit against Steward Hruska "constitute actual damages."[19] Specifically, Rx.com argues that it is entitled to reasonable attorneys' fees for having obtained a preliminary injunction,[20] and cites *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 796 (Tex. App.—Houston [1st Dist.] 2001, no pet.) for the proposition that an award of injunctive relief constitutes *something of value* for which the additional award of attorney's fees may constitute damages.

To recover attorneys' fees under Chapter 38 of the Texas Civil Practice and Remedies Code,[21] however, "'a party must (i) prevail on a cause of action for which attorneys' fees are

---

[19]    Dkt 51.

[20]    On January 9 2006, the court issued a preliminary injunction. *See* Dkt. 22. For the most part, the court granted those portions of the injunction the parties reached agreement upon.

[21]    "A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: . . . (8) an oral or written contract." *Rodgers*, 816 S.W.2d at 551 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 1986)).

14

recoverable and (ii) recover damages.'" *Id*. (quoting *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997); *see also Rodgers v. RAB Investments, Ltd.*, 816 S.W.2d 543, 551 (Tex. App.—Dallas 1991, no writ) ("A party must satisfy two requirements to obtain an award of attorney's fees.  First, a party must prevail on a cause of action for which attorney's fees are recoverable.  Second, the party must recover damages"); *Butler*, 51 S.W.3d 787 (court upheld award of attorney's fees where party prevailed on claim for breach of contract *and* obtained a permanent injunction); *Williams v. Compressor Eng'g Corp.*, 704 S.W.2d 469 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (upholding attorney's fees where party prevailed on a claim for breach or written contract *and* obtained a permanent injunction).

*Rodgers*, *Butler*, and *Williams* are each distinguishable.  First, it is doubtful, though perhaps arguable, that Rx.com has satisfied the element of obtaining "something of value" in the form of a preliminary injunction.  It is clear that Rx.com does not satisfy the contingent prong of prevailing on a cause of action for which attorneys' fees are recoverable.[22]  *Butler*, 51 S.W.3d 787, 796.

Rx.com hopes to satisfy the *Butler* prongs by establishing a breach of confidentiality by Steward Hruska.  Rx.com argues that not only would such a disclosure establish a *per se* breach of the confidentiality agreement, it would also establish irreparable harm as a matter of law.  Rx.com would consequently be entitled to a permanent injunction, which when coupled with Steward Hruska's *per se* breach, would satisfy *Butler* and entitle Rx.com to attorney fees as damages under Chapter 38 of the Texas Civil Practice and Remedies Code.  This "damage" would in turn allow

---

[22]   In this case Rx.com would have to prevail on its claim for breach of contract.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 1986).

15

Rx.com to proceed on its four remaining claims. To state Rx.com's position on this issue demonstrates the bootstrapping nature of this argument and why it simply does not work.

Furthermore, because Rx.com has not established a breach of confidentiality by Steward Hruska, even this circular damage theory necessarily fails. Consequently, summary judgment is appropriate since there is no genuine issue of material fact concerning damages.

### 3.     Permanent Injunction

Rx.com seeks a permanent injunction against Steward Hruska to prohibit her from disclosing Rx.com's confidential information; keeping any documents related to Rx.com; or voluntarily cooperating with any of the PBM defendants in the Texarkana lawsuit. As the prior analysis suggests, Rx.com fails to carry its burden that such an injunction is warranted.

The standard for a permanent injunction is essentially the same as for a preliminary injunction. *See Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847 (5th Cir. 2004) (citing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)); *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 597 n.34 (5th Cir. 2003). To obtain a permanent injunction, a plaintiff must show: (1) actual success on the merits; (2) an irreparable injury if the injunction is not granted or an inadequate remedy at law to compensate for the injury; (3) injury to the plaintiff if the injunction is not granted outweighs the injury to the defendant if it is granted; and (4) the granting of the permanent injunction will not disserve the public interest. *See eBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837, 1839 (2006); *Amoco Prod.*, 480 U.S. at 546 n.12.

Here Rx.com has not been successful on the merits. Moreover, there has been no requisite showing of irreparable harm to Rx.com because it no longer operates an online pharmacy and there

is no suggestion that it intends to do so in the future. *Cf. Dresser-Rand*, 361 F.3d at 848 ("it would be difficult for [the plaintiff] to claim that it would suffer irreparable injury if [the defendant] were to manufacture . . . [products based on confidential information] when [the plaintiff] has withdrawn its products from that market").

### CONCLUSION

Accordingly, plaintiff Rx.com's motion for summary judgment is DENIED. Defendant Cathy Steward Hruska's motion for summary judgment is GRANTED.

Signed on September 7, 2006, at Houston, Texas.

_____
Gray H. Miller
United States District Judge